**FILED**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2010 JUL 22 ᗡ 3: 20

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE. FLORIDA

**TRAILER BRIDGE, INC.,**
a Delaware corporation,

    **Plaintiff,**

vs.

                                              Case No.: 3:09-cv-1135-J-20MCR

**ILLINOIS NATIONAL INSURANCE
COMPANY,** an Illinois corporation,

    **Defendant.**

_____/

## ORDER

Before this Court is Plaintiff Trailer Bridge, Inc.'s Motion for Partial Summary Judgment Re Illinois National Insurance Company's Duty to Defend (Doc. 11, filed December 15, 2009); Defendant Illinois National Insurance Company's Motion for Summary Judgment and Response in Opposition to Plaintiff Trailer Bridge's Motion for Partial Summary Judgment (Doc. 21, filed January 25, 2010); and Plaintiff Trailer Bridge, Inc.'s Opposition to Defendant Illinois National Insurance Company's Motion for Summary Judgment (Doc. 25, filed February 4, 2010).

**I. Statement of Facts[1]**

Plaintiff, Trailer Bridge, Inc. ("Trailer Bridge"), is a Delaware corporation with its principal place of business in Jacksonville, Florida. Trailer Bridge offers integrated freight

---

[1] This Court's use of the word "facts" is solely for purposes of deciding the Motions before it. *Kelly v. Curtis*, 21 F.3d 1544, 1546 (11th Cir. 1994) (citation omitted).

1

shipping services between the continental United States and Puerto Rico. At issue in this case is whether its insurer, Illinois National Insurance Company ("Illinois National"), has a duty to defend or indemnify Trailer Bridge in a separate action.

Illinois National issued Commercial General Liability Policy No. TGL 989-58-40 ("the Policy") to Trailer Bridge for the policy period July 1, 2004, to July 1, 2005. (Doc. 1-1, Exhibit 1, filed November 19, 2009). Subject to certain conditions, Illinois National agreed to pay any damages Trailer Bridge became legally obligated to pay because of "personal and advertising injury," and defend against any suit seeking those damages. *Id.* at 12. "Personal and advertising injury" is defined by the Policy as:

> injury . . . arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> f. The use of another's advertising idea in your "advertisement"; or
>
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement"[.]

*Id.* at 21.

In 2008, various entities filed class action lawsuits against Trailer Bridge and other parties in different U.S. district courts. The actions shared factual questions relating to allegations that Trailer Bridge and others conspired to fix prices of cabotage services to and from Puerto Rico, in violation of the Sherman Antitrust Act. On August 13, 2008, the Judicial Panel on Multidistrict Litigation consolidated and transferred those cases, along with all related future actions, to the United States District Court for the District of Puerto Rico for pre-trial administration. The underlying consolidated action is captioned *In Re Puerto Rican Cabotage Antitrust Litigation*, MDL Docket No. 3:08-md-1960 (DRD) ("Antitrust Litigation").

On April 29, 2008, through May 7, 2008, Trailer Bridge provided Illinois National with copies of the initial class action complaints and requested that the company provide a defense to the suits. By letter dated August 19, 2008, Illinois National notified Trailer Bridge that the actions did not implicate coverage under the Policy. However, on May 18, 2009, Trailer Bridge retendered the individual complaints and the consolidated second amended complaint. After reviewing the pleadings, Illinois National again found that no coverage existed under the Policy. Thereafter, Illinois National also denied a defense to the Antitrust Litigation upon receipt of the consolidated third and fourth amended complaints.

On November 19, 2009, Trailer Bridge filed its Complaint in this Court for breach of contract and declaratory judgment. (Doc. 1). The two-count Complaint asserts that the complaint filed in the Antitrust Litigation alleges a personal and advertising injury offense, and thus, Illinois National 1) owes Trailer Bridge a duty to defend, and 2) breached the insurance contract by failing to provide a defense.

## II. Discussion

Trailer Bridge moved for summary judgment on the specific issue of whether Illinois National owes a duty to defend in the Antitrust Litigation. Illinois National submitted its memorandum in opposition and its cross motion for summary judgment on the issues of whether it owes Trailer Bridge a duty to defend and whether it has an obligation to indemnify.

### a. Standard of Review

Summary judgment is proper if, following discovery, the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file show that there is no genuine issue as to any material fact in dispute and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56. Further, when the essential facts of the case are not in dispute, it is appropriate for a district court to interpret an insurance contract to determine whether any ambiguities exist as a matter of law. *Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985).

### b. Choice of Law and Contract Construction

This case is before this Court on diversity jurisdiction. In diversity actions, the federal court must apply the substantive law of the state in which it sits, "except in matters governed by the Federal Constitution or by act of Congress." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Because the insurance contract was issued in Florida and the questions before this Court are ones of contract construction, it is undisputed that Florida law governs the meaning of the Policy and its application to the facts of this case. In the absence of precedents from Florida's courts, however, the case law of other jurisdictions that have examined similar policy provisions

may be considered to determine the issues of state law as this Court believes the Florida Supreme Court would. *State Farm Fire and Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004).

"In insurance coverage cases under Florida law, courts look at the insurance policy as a whole and give every provision its 'full meaning and operative effect.'" *State Farm Fire and Cas. Co.*, 393 at 1230 (quoting *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1186 (11th Cir. 2002)). "[I]nsurance contracts are construed according to their plain meaning. Ambiguities are construed against the insurer and in favor of coverage." *Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.*, 913 So.2d 528, 532 (Fla. 2005). "Although ambiguous provisions are construed in favor of coverage, to allow for such a construction the provision must actually be ambiguous." *Id.* Courts are not permitted to "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Id.* (internal quotation marks omitted).

### c. Duty to Defend

In Florida, "the general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the true facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses." *State Farm Fire and Cas. Co.*, 393 F.3d at 1230 (citing *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So.2d 579, 580-81 (Fla. 4th DCA 2000)). The insurer must provide a defense in the underlying action if the complaint states facts that bring the injury within the policy's coverage. *Id.* "If the complaint alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit." *Lazzara Oil Co. v. Columbia Cas. Co.*, 683 F. Supp. 777, 779 (M.D. Fla. 1988). The merits of the underlying suit

5

have no bearing on whether the duty is owed. *State Farm Fire and Cas. Co.*, 393 F.3d at 1230. "Furthermore, any doubt about the duty to defend must be resolved in favor of the insured. Coverage is determined from examining the most recent amended pleading, not the original pleading." *Id.* (citation omitted).

The parties agree that no material facts are in dispute. Illinois National's duty to defend depends entirely on interpretation of the Policy and its application to the allegations of the underlying complaint. Since these issues are matters of law, this question is appropriate for summary judgment.

The parties filed a Joint Notice to Court (Doc. 43, filed June 2, 2010) representing that Trailer Bridge was dismissed with prejudice from the Antitrust Litigation on April 30, 2010. Thus, the Fourth Amended Class Action Complaint (Doc. S-1, filed May 12, 2010) ("Antitrust Complaint") is the most recent pleading in which Trailer Bridge is named as a party. The Antitrust Complaint alleges violations of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 3.[2] It claims the underlying defendants restricted competition through a continuing agreement to allocate customers, rig bids, and fix rates, surcharges, and other fees. (Doc. S-1 at 59-61). The Antitrust Complaint further alleges the underlying defendants attempted to conceal their scheme, in part, by making false and misleading public statements about the reasons for rate and surcharge increases. *Id.* at 54-57. As an example, it points to a portion of an interview given by

---

[2] This Court notes that sections of the Antitrust Complaint, which is currently filed under seal, are quoted within this Order. *See* Order (Doc. 40, signed April 22, 2010). All material discussed or quoted, however, is substantially similar to the allegations contained in the complaint filed in the public record. *See* Second Consolidated Amended Class Action Complaint (Doc. 1-2, Exhibit 4, filed November 19, 2009).

Trailer Bridge's CEO in 2005. *Id.* at 56. He is quoted as stating "that customer decisions were driven by '[p]rice in an all-inclusive sense, which starts with the freight rate[.]'" *Id.*

The plaintiffs in the Antitrust Litigation took these statements to imply the underlying "Defendants could not rig bids or set and increase rates, surcharges or fees, and therefore were not doing so[.]" *Id.* They allegedly "lulled [the underlying] Plaintiffs and members of the class into believing that the price increases were the normal result of competitive market forces rather than the product of [the underlying] Defendants' anti-competitive efforts." *Id.*

Trailer Bridge argues that the above allegations against it "potentially evidence 'use of another's advertising idea in [its] advertisement' so as to fall within the potential coverage for offense section" of the Policy. (Doc. 11 at 2). It claims an implication of market driven pricing constitutes an advertising idea, *id.* at 13, and the Antitrust Complaint indicates the idea was already used by its co-defendants in the underlying action, thus making it an idea of another's. *Id.* at 10.[3]

### i. Advertising Injury

Illinois National takes issue with Trailer Bridge's interpretation of the Policy. According to Illinois National, the Antitrust Complaint does not allege wrongful acts were committed in Trailer Bridge's "advertisement," or that Trailer Bridge used "another's advertising idea." Because the Antitrust Complaint fails to contain allegations comprising an advertising injury offense, it argues coverage is not implicated under the Policy.

---

[3] Trailer Bridge argues that multiple Policy exclusions, including the exclusion for injury arising out of criminal acts, do not apply in this case. *Id.* at 19-25; *see* Doc. 1-1, Exhibit 1, at 13. Illinois National fails to oppose the arguments, and merely claims that this Court need not consider their applicability at this time. (Doc. 21 at 31). Thus, for the purposes of this Motion, Illinois National has conceded the issue.

7

The Policy states Illinois National has a duty to defend against any cases seeking damages because of personal and advertising injury. (Doc. 1-1, Exhibit 1, at 12). "Personal and advertising injury" is defined as injury arising out of specific, enumerated offenses, including "[t]he use of another's advertising idea in your 'advertisement[.]'" *Id.* at 21. The Policy defines "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." *Id.* at 19.

The disputed quotation derives from an article published by The Wall Street Transcript ("Periodical"). (Doc. 1-1, Exhibit 5, filed November 19, 2009). The article, based on an interview of Trailer Bridge's past CEO, covers multiple topics, ranging from what types of assets the company owns and descriptions of its services, to the CEO's general outlook on the relevant market. While it could conceivably lead to additional customers or supporters for Trailer Bridge, that in no way appears to be the article's purpose. Its purpose, instead, seems to be purely informational. The Periodical questioned the CEO so that it could provide a summary of the company and market to its readership. No representation is made that Trailer Bridge paid the Periodical to publish the article or directed its content in any way. Including quotes from Trailer Bridge's CEO, which happen to be beneficial to the company, does not transform the article into an advertisement of the company's. Notwithstanding, even if the Antitrust Complaint identified a relevant advertisement, it still fails to allege facts showing use of "another's advertising idea."

The Policy does not define "advertising idea." Yet, the Eleventh Circuit, applying Florida law, has construed the term to mean "any idea or concept related to the promotion of a product to the public." *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1188 (11th Cir. 2002). Put

8

another way, "[a]n advertising idea is a concept about the *manner* a product is promoted to the public." *Gemini Ins. Co. v. The Andy Boyd Co.*, Civil Action No. H-05-1861, 2006 WL 1195639, at *2 (S.D. Tex. May 3, 2006) (citing *Hyman*, 304 F.3d at 1188).

It is merely asserted that Trailer Bridge made misleading statements about the reasons for increased prices, specifically, representing "that customer decisions were driven by '[p]rice in an all-inclusive sense, which starts with the freight rate.'" (Doc. S-1 at 56). No effort was made to differentiate or promote any aspect of Trailer Bridge's products or services. Instead, the statement provided a brief explanation of the factors affecting price in the entire Puerto Rican cabotage market. *Cf. American Simmental Ass'n v. Coregis Ins. Co.*, 282 F.3d 582, 587 (8th Cir. 2002) ("The plain and ordinary meaning of 'advertising idea' generally encompasses an idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage." (internal quotation marks omitted)); *Proxima Corp. v. Federal Ins. Co.*, 26 F.3d 132, at *1 (9th Cir. 1994) (unpublished table decision) (holding that the shape of a product was not an advertising idea because there was no allegation in the complaint "that the design itself [was] a trademark, or [was] intended to distinguish the product from others that might enter the market." (citation omitted)). Regardless of whether the statement lulled customers into believing rates were controlled by the free market, its purpose does not appear related to promoting Trailer Bridge's product.

Even assuming, however, the explanation amounted to an advertising idea, the Antitrust Complaint fails to allege it belonged to another. Under the Policy, the advertising idea used must be "another's" to meet the definition of the claimed offense. (Doc. 1-1, Exhibit 1, at 21). According to Trailer Bridge, the Antitrust Complaint implies the idea was used by its co-

conspirators prior to the date of the CEO's interview. (Doc. 11 at 10; Doc. 25 at 9). It argues this, paired with the pleading's failure to allege or imply Trailer Bridge created the idea, "raise[s] the unavoidable inference that the subject 'advertising idea' originated with an entity other than Trailer Bridge." (Doc. 25 at 9).

Trailer Bridge asks this Court to infer too much. "[C]ourts need not stretch the allegations beyond reason to impose a duty on the insurer." *Holloway Sportswear, Inc. v. Transp. Ins. Co.*, 58 F. App'x 172, 175 (6th Cir. 2003). Contrary to Trailer Bridge's argument, the broad assertion, "[f]rom 2002 through April 2008, Defendants . . . affirmatively and wrongfully concealed their unlawful conduct" through "misrepresentations . . . concerning the reasons for increases in rates, surcharges and other fees[,]" does not imply another individual originated or used the purported advertising idea prior to Trailer Bridge. (Doc. S-1 at 54-55; *see* Doc. 25 at 9).

As an alternative argument, Trailer Bridge contends that airlines routinely cite fuel surcharges as an explanation for the increase in their prices, which establishes it was another's idea. (Doc. 11 at 10). Notwithstanding, courts must look to the underlying complaint to determine the duty to defend, not the true facts of the cause of action against the insured or the insured's version of the facts. *State Farm Fire and Cas. Co.*, 393 F.3d at 1230. Just as there is no mention of the purported advertising idea belonging to a co-conspirator, nowhere in the Antitrust Complaint is it implied that the idea was ever used by or belonged to an airline. The Antitrust Complaint simply fails to allege an advertising idea belonged in any way to another entity.

Having determined the Antitrust Complaint does not contain allegations supporting a

qualifying offense, there can be no advertising injury arising therefrom. This alone is enough to relieve Illinois National of a duty to defend Trailer Bridge under the asserted Policy section. Nevertheless, for the sake of completeness, this Court will address Illinois National's additional arguments.

### ii. Causation

Illinois National contends that even if the Court were to find the Antitrust Complaint contained allegations of an advertising injury, no causal connection lies between the damages sought by the underlying plaintiffs and an advertising injury. (Doc. 21 at 8, 27). "It was the inflated costs of [the underlying] defendants' cabotage services, and not the 'cover-up' or explanation for the surcharge, which gave rise to the underlying plaintiffs' damages." *Id.* at 8.

According to Trailer Bridge, though, "[i]t is of no moment that the asserted *Ocean Shipping Antitrust Litigation* claims alleged violations of antitrust law." (Doc. 11 at 7). All that is required is the Antitrust Complaint plead some injury arose out of the "use of another's advertising idea" offense. *Id.* at 16. This Court must construe the Policy language liberally in favor of the insured and strictly against the insurer. *Id.* at 8. To limit coverage to the situations described by Illinois National would be to rewrite the contract. *Id.*

The rule that an insurance policy should be interpreted liberally in favor of the insured applies only when there is more than one reasonable interpretation. *See State Farm Fire and Cas. Co.*, 393 F.3d at 1230; *Taurus Holdings, Inc.*, 913 So.2d at 532. The Policy specifically states Illinois National must provide a defense only to cases seeking sums that the insured would become legally obligated to pay as damages "because of" personal and advertising injury. (Doc. 1-1, Exhibit 1, at 12).

11

The Antitrust Complaint asserts the underlying defendants,

> restrict[ed] competition by allocating customers, rigging bids, and fixing the prices of rates, surcharges and other fees for Puerto Rican cabotage . . . . Defendants' unlawful conduct resulted in artificially high, supra-competitive prices charged by Defendants and their co-conspirators to Plaintiffs . . . . Plaintiffs and members of the class seek to recover three times their overcharge damages plus interest, attorneys' fees and costs of litigation.

(Doc. S-1 at 60-61). Thus, it is apparent the underlying plaintiffs allege their injuries were caused by higher prices arising from price-fixing, not from the use of another's advertising idea in Trailer Bridge's advertisement. None of the damages sought by the underlying plaintiffs in the Antitrust Complaint are payments requested "because of" an advertising injury, but instead were strictly for antitrust injuries. *Cf. Great Am. Ins. Co. v. Riso, Inc.*, 479 F.3d 158, 162 (1st Cir. 2007) (finding that the insurer did not have a duty to defend based, in part, on the fact "the damages to the . . . plaintiffs, if any occurred, were due to the higher costs caused by [the defendant's] higher prices, rather than any injury to the plaintiffs' reputations"); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Alticor, Inc.*, Nos. 05-2479, 06-2538, 2007 WL 2733336, at *6 (6th Cir. Sept. 19, 2007) ("Because the policies at issue in this matter do not purport to cover antitrust injuries, and because the damages sought by the [underlying] plaintiffs were only for such antitrust injuries, the policies issued by the plaintiff-insurers do not apply in this instance, and there was no duty to defend.").

"[T]he theories advanced and labels used in a complaint are subordinate to the facts alleged for the purpose of determining the duty to defend." *Harris Corp. v. Travelers Indem. Co.*, No. 96-166-CIV-ORL-19A, 1998 WL 1657171, at *2 (M.D. Fla. Mar. 19, 1998) (citing *Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405-06 (11th

Cir. 1993)). Therefore, the mere inclusion of the term "marketing" within the Antitrust Complaint is not enough to bring the claim within the Policy's coverage. *Cf. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2007 WL 2733336, at *6. It appears the allegations regarding the purported use of the advertising idea were included simply to exemplify the efforts undertaken to hide the price-fixing scheme, an antitrust offense, so that the statute of limitations could be equitably tolled. (Doc. S-1 at 56-57). The relationship between the purported advertising injury and the damages claimed in the underlying action is too remote to say it is seeking damages "because of" the injury. This Court finds it very unlikely that the insured or the insurer intended coverage for the type of conduct alleged in the Antitrust Complaint.

### d. Duty to Indemnify

The above analysis establishes that the allegations in the Antitrust Complaint are not covered by the Policy. Thus, Illinois National was not in breach for failing to provide a defense and holds no duty to indemnify Trailer Bridge. *See, e.g., Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc.*, 595 F. Supp.2d 1319, 1322 (S.D. Fla. 2009) ("[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify."); *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So.2d 419, 422 (Fla. 3d DCA 1995).

Accordingly, it is **ORDERED and ADJUDGED**:

1. Plaintiff Trailer Bridge, Inc.'s Motion for Partial Summary Judgment Re Illinois National Insurance Company's Duty to Defend (Doc. 11, filed December 15, 2009) is **DENIED**.

2. Defendant Illinois National Insurance Company's Motion for Summary Judgment (Doc. 21, filed January 25, 2010) is **GRANTED**.

3. The Clerk is directed to enter judgment in favor of Defendant that it does not owe a duty to defend or indemnify for the underlying action, and **CLOSE** the file.

4. The Show Cause Order (Doc. 36, signed March 31, 2010) is **DISCHARGED**.

**DONE AND ENTERED** in Jacksonville, Florida, this 21st day of July, 2010.

HARVEY E. SCHLESINGER
United States District Judge

Copies to:

Alan S. Wachs, Esq.
Andrew M. Sussman, Esq.
David A. Gauntlett, Esq.
Bradley R. Johnson, Esq.
Daniel I. Graham, Jr., Esq.
James F. Baffa, Esq.
Latasha Garrison-Fullwood, Esq.
Laura A. McArdle, Esq.
Mary F. Licari, Esq.
Richard H. Nicolaides, Jr., Esq.